UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------X
IVAN BENJAMIN,

               Petitioner,                        MEMORANDUM & ORDER
                                                             05-CV-4372 (NGG)

- against -

SUPERINTENDENT CUNNINGHAM,
Woodbourne Correctional Facility,

               Respondent.
----------------------------------------------X
GARAUFIS, United States District Judge.

      Petitioner Ivan Benjamin ("Benjamin" or "Petitioner") brings this habeas corpus petition pursuant to 28 U.S.C. § 2254, alleging that he is being held in violation of his federal constitutional rights, and seeking to overturn his July 11, 2002 conviction for Robbery in the First Degree (New York Penal Law ("Penal Law") § 160.15(4)), two counts of Robbery in the Second Degree (Penal Law § 160.10(1), [2](a)), Assault in the Third Degree (Penal Law § 120.00), and Resisting Arrest (Penal Law § 205.30). For the reasons set forth below, the petition is DENIED.

## I. Background

      On November 30, 2001, James Wilson ("Wilson") was riding his bicycle around 142 Street and Rockaway Boulevard in Queens, New York. Wilson asserts that while riding his bicycle, he observed a grey Lincoln Mark VII coming towards him that swerved in his direction to avoid a pothole, coming "real close" to hitting him. (Trial Transcript ("Tr.") at 321.) Wilson and the car's driver, Petitioner, argued over whether or not Petitioner had intentionally tried to strike Wilson. Wilson claims that he saw something in Petitioner's hand during their first

1

encounter that resembled the nose of a gun, but is uncertain of what exactly he had seen. (Tr. at 326, 468-69.) After the argument, Wilson testified that the vehicle left the scene and he resumed riding his bike. After traveling a short distance, Petitioner made a U-turn back towards Wilson and parked a few feet from him. As Petitioner exited the vehicle, his hand was obscured by his jacket sleeve. (Tr. at 329.) When another car pulled up to the scene, Petitioner allegedly knocked Wilson to the ground by hitting him in the back of the head with a metal object, possibly the gun Wilson had previously seen. (Tr. at 329-30, 470.) As Wilson laid on the ground, Petitioner and the four accomplices who arrived in the other car hit and kicked him. Wilson claims that the attackers took money and jewelry from him. After the assault and robbery, Wilson observed his attackers entering their respective vehicles, but could only identify Petitioner. Wilson testified that Petitioner said he had "been around for 30 years" and deserved respect. (Tr. at 333.) Wilson filed a report with the police that evening in which he told the officer this information.

About a month after the assault and robbery, Wilson saw Petitioner on the street standing by the Lincoln Mark VII he had seen during the previous encounters. Wilson wrote down the Lincoln's license plate number and exited the vehicle to argue with Petitioner. Wilson testified that he punched Petitioner in the face and admits that Petitioner did not appear to recognize him. Wilson contacted the police, who a short time later detained Petitioner. Wilson was driven by the police to where they had stopped Petitioner and his vehicle. The police performed a "show up," where from his seat in the police car Wilson identified Petitioner as the person who had robbed him. The police arrested Petitioner and charged him with Robbery, Assault and Resisting Arrest.

Wilson claims that in the months after Petitioner's arrest, several threats and bribe attempts were directed at Wilson and his family in an attempt to force Wilson to drop the charges. On March 20, 2002, Wilson signed a sworn statement at Petitioner's trial counsel's office requesting that the state drop the charges against Petitioner because Wilson had been mistaken in regards to Petitioner's involvement in the assault and robbery. It states that "[it] is my firm belief now, after reflection on the incident, that I assumed Mr. Benjamin was one of the perpetrators because of the dispute I had with him earlier." (Wilson Affidavit ¶ 10.)

The trial judge ruled that because defense counsel elicited testimony with regard to this signed statement during cross-examination, on re-direct the prosecutor was permitted to establish Wilson's state of mind at the time he signed the statement through testimony of the threats he had received, even though it was double, triple and quadruple hearsay. The judge instructed the jury that this testimony given by Wilson was not being admitted to connect Petitioner to the alleged threats, but that "[t]he sole and exclusive reason why this testimony is coming into evidence is for the jury's evaluation of Mr. Wilson's testimony with regard to the testimony he has given . . . about the statement he signed in [defense counsel's] office." (Tr. at 458, 59.)

At the conclusion of the trial, the jury convicted Petitioner of all of the charges. On July 11, 2002, the court sentenced Petitioner as a predicate felony offender to concurrent determinate prison terms of ten years for the First Degree Robbery conviction, seven years for the Second Degree Robbery convictions, and one year for the Third Degree Assault and Resisting Arrest convictions. In June 2003, Petitioner filed his direct appeal with the Appellate Division, Second Department. On December 22, 2003, the Appellate Division affirmed Petitioner's conviction, finding that the evidence "was legally sufficient to establish defendant's guilt beyond a

reasonable doubt" and "upon the exercise of [their] factual review power, [] are satisfied that the verdict of guilt was not against the weight of the evidence." People v. Benjamin, 768 N.Y.S.2d 659 (N.Y. App. Div. 2003). On March 25, 2004, the New York Court of Appeals denied Benjamin's leave to appeal the Appellate Division's order. On June 24, 2004, Petitioner submitted a motion seeking to vacate his conviction pursuant to New York Criminal Procedure Law ("N.Y. C.P.L.") § 440.10. Petitioner argued that the recent United States Supreme Court decision in Washington v. Crawford, 541 U.S. 36 (2004) should apply retroactively, and establishes that Petitioner's Confrontation Clause rights were violated by the admission of Wilson's testimony at trial regarding the threats he received. On September 28, 2004, the court denied Petitioner's motion without determining whether Crawford applied retroactively because the testimony was not offered for the truth of the matter asserted, but rather to establish Wilson's state of mind when he made the recantation. On December 16, 2004, the Appellate Division, Second Department denied Petitioner's leave to appeal the court's denial of his motion to vacate.

On September 6, 2004, Petitioner filed a *pro se* petition for a writ of habeas corpus. Because his application for appeal to the New York Court of Appeals was denied on March 25, 2004, his habeas corpus petition was timely. 28 U.S.C. § 2244(d)(1)(A) (setting forth a one-year period of limitations that runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review"). Petitioner raises two claims in the habeas petition: 1) Petitioner claims that the state failed to prove his guilt beyond a reasonable doubt, and 2) Petitioner claims that his right to confront witnesses under the Sixth Amendment was violated.

4

## II. Standard of Review

The standard of review for habeas corpus petitions filed by state prisoners is set forth in 28 U.S.C. 2254(d), as amended by the Anti-Terrorism and Effective Death Penalty Act. If Petitioner's claims have been fully adjudicated on the merits in state court, he must show that the state court proceedings–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court's decision is contrary to clearly established federal law as determined by the Supreme Court "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A state court's decision is an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal rule from [the] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407.

Accordingly, this court cannot grant the Petitioner's writ if it merely "concludes in its independent judgment that the relevant state-court decision applied clearly established Federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. The Second Circuit has warned, however, that while "[s]ome increment of incorrectness beyond error is required. . . . the increment need not be great; otherwise habeas relief would be limited to

5

state court decisions so far off the mark as to suggest judicial incompetence." Francis v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (citations and quotation marks omitted).

## III. Discussion

### A. Insufficiency of the Evidence

Petitioner first argues that his conviction of Robbery in the First Degree, two counts of Robbery in the Second Degree, Assault in the Third Degree, and Resisting Arrest were against the weight of the evidence. Petitioner essentially argues that because the only evidence to support the Robbery and Assault convictions was Wilson's testimony, the state had failed to prove beyond a reasonable doubt certain elements of the charged crimes. In particular, Petitioner asserts that Wilson's testimony could not support the claim that Petitioner displayed a firearm, or what appeared to be a firearm, during the alleged Robbery as is required to sustain a conviction under Penal Law § 160.15(4). Further, Petitioner argues that Wilson's testimony fails to establish a link between Petitioner and the other attackers, and thus whether Petitioner actually stole or aided the theft of Wilson's property, leaving sufficient doubt to overturn the Second Degree Robbery and Third Degree Assault convictions. With regard to the Resisting Arrest conviction, Petitioner argues that despite the arresting officer's testimony to the contrary, this charge was not proven beyond a reasonable doubt.

The federal standard of review for a due process claim that a verdict lacks sufficiency of the evidence is "whether 'no rational trier of fact could have found proof of guilt beyond a reasonable doubt.'" Hawkins v. West, 706 F.2d 437, 439 (2d Cir. 1983) (quoting Jackson v.

Virginia, 443 U.S. 307, 324 (1979)).[1] The Supreme Court has clearly held that the prosecution at trial need not have disproved all other theories of the case in order to sustain a conviction. Jackson, 443 U.S. at 326.

### i. Robbery in the First and Second Degree

Under New York Penal Law § 160.15, the elements of Robbery in the First Degree are (1) the forcible stealing of property, and (2) that in the course of the commission of the crime or immediate flight therefrom, the defendant displayed what appeared to be a firearm. Under this statute, to establish that the defendant displayed a firearm "the prosecution must demonstrate (1) the defendant consciously displayed 'something that could reasonably be perceived as a firearm with the intent of compelling an owner of property to deliver it up or for the purpose of preventing or overcoming resistance to the taking,' and (2) the display was actually witnessed by the victim by sight, sound or touch." Gonzalez v. Reiner, 177 F. Supp. 2d 211 (S.D.N.Y., 2001) (quoting People v. Baskerville, 457 N.E.2d 752, 756 (1983)).

At Petitioner's trial, the prosecution relied on the testimony of Wilson to establish each element of the offense. Wilson testified that he and Petitioner had a verbal argument when Petitioner's car nearly hit Wilson while he was riding his bicycle. (Tr. at 322-27.) During this encounter, Wilson testified that Petitioner threatened to "go Brooklyn style" on Wilson, which is

---

[1] Petitioner discusses the requirement that elements of a crime be proven beyond a reasonable doubt, citing In Re Winship, 397 U.S. 358 (1970) in support of this proposition. (See Petitioner's Memorandum of Law at 10-12). Winship only addresses the "narrow question whether proof beyond a reasonable doubt is among the 'essentials of due process and fair treatment' required during the adjudicatory stage when a juvenile is charged with an act which would constitute a crime if committed by an adult." Id. at 358. Nevertheless, a habeas petitioner's challenge to the sufficiency of the evidence is governed by the standard set forth in Jackson v. Virginia. See Hawkins, 706 F.2d at 439.

7

street slang meaning "to shoot" someone. Further, Wilson saw what he believed to be the nose of a gun in Petitioner's hand, with the rest of the gun obscured by Petitioner's jacket sleeve. Id. Concerned drivers approached both men and advised them not to fight. The two briefly proceeded in opposite directions until Petitioner made a U-turn and again confronted Wilson. As Petitioner exited the vehicle, his hand was again obscured by his jacket sleeve. (Tr. at 329.) The two resumed their argument until Wilson noticed a black car pull up near where they were arguing. As four men exited the car, Wilson was knocked on the head from behind with what he believes to have been a metal object, and assumes it was Petitioner who struck him since the Petitioner was the only other person in the vicinity. (Tr. at 329-331, 470.) The men then punched and kicked Wilson, who had fallen to the ground, ripped out his dread locks and stole his bracelet and money. Id. Wilson then testified that, although he did not see who had stolen the bracelet and money, when the men returned to their vehicles Petitioner turned around stating "you better respect me[,] [a]sk anybody, I been around for 30 years." (Tr. at 333.)

Petitioner contends that the evidence in this case was insufficient to convict him because the victim's testimony was inconsistent with a statement he signed in defense counsel's office and is nevertheless uncorroborated by other evidence. Petitioner's argument that the evidence was insufficient because Wilson's testimony was inconsistent and was unsubstantiated by other evidence does not entitle him to habeas relief. To reiterate, in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 the "applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 324 (1979).

Wilson's testimony supports a rational juror's conclusion that property of his was forcibly

8

stolen with the aid of Petitioner, and that Petitioner displayed what appeared to be a firearm. Wilson testified that there was ample lighting on the street and that he clearly saw Petitioner's face and car during both encounters. (Tr. at 322, 327-329.) In addition to Wilson's identification of Petitioner, on November 30, 2001 Wilson filed a police report that includes a description of the assailant's car, which has the same model and color as the car Petitioner was standing near when he was arrested one month later. (Tr. at 593-594.) Wilson also clearly testified that he observed what he believed to be the nose of a gun in Petitioner's hand and felt something similar to a gun hit him in the head. (Tr. at 326.) Collectively, this "was sufficient evidence to justify a rational trier of the facts to find guilt beyond a reasonable doubt." Jackson, 443 U.S. at 313. Therefore, I see no basis for overturning the jury's conviction on either the Robbery in the First Degree charge or the two counts of Robbery in the Second Degree.

### ii. Assault in the Third Degree and Resisting Arrest

Similarly, Wilson's testimony supports the conclusion that (1) with the intent to cause physical injury to Wilson, (2) Petitioner caused such injury by hitting him on the head with a metal object, as is required for a verdict of guilty of Assault in the Third Degree, Penal Law § 120.00(1). As for the Resisting Arrest conviction, Petitioner cites the wrong statutory law (see Memorandum in Support of the Habeas Petition, p. 14), asserting that causing physical injury is an element of the offense. In fact, Petitioner was convicted under Penal Law § 205.30, which merely requires a showing that Petitioner "prevents or attempts to prevent a police officer . . . from effecting an authorized arrest." Therefore, I find the arresting officer's testimony describing how five or six officers were required to subdue Petitioner, ample evidence to support a guilty verdict on this charge. (See Tr. at 575, 576.)

9

For the reasons stated, Benjamin's request for habeas relief on this ground is therefore denied.

**B. Denial of Right to Confrontation**

Petitioner claims that the trial court violated his Constitutional right to confront witnesses by improperly admitting hearsay testimony that was highly prejudicial. Petitioner argues that Wilson's testimony was the primary evidence that the State presented, and was called into doubt by Wilson's signed affidavit denying Benjamin's involvement in the assault and robbery for which he was convicted. Because Wilson recanted this signed statement during his testimony at trial, Petitioner asserts that the trial court should have held a hearing before Wilson was permitted to testify as to why he signed the affidavit in the first place. According to Petitioner, Wilson should not have been permitted to testify about the threats he received because these threats were hearsay and thus the prosecution should have been ordered by the court to present other witnesses to corroborate the threats before admitting Wilson's testimony into evidence.

Petitioner asserts that the United States Supreme Court's recent decision Crawford v. Washington[2], 541 U.S. 36 (2004), should apply retroactively for finding a Constitutional violation of Petitioner's rights due to the trial court's admission of Wilson's testimony regarding threats and bribes. In Crawford, the Court held that out-of-court testimonial statements by witnesses are barred under the Confrontation Clause of the Sixth Amendment to the United

---

[2] Petitioner also cites Ohio v. Roberts. 448 U.S. 56 (1970) in support of his argument that Wilson's testimony regarding the threats did not meet constitutionally required "indicia of reliability." (See Petitioner's Memorandum of Law at 28-30.) But. Ohio v. Roberts does not apply to the present analysis for the same reason that Crawford is inapplicable: Wilson's testimony regarding the threats was not hearsay; rather, this testimony was admitted for the purpose of showing Wilson's state-of-mind at the time he signed the statement prepared by Benjamin's attorney.

10

States Constitution, unless the witnesses are available and the defendant had an opportunity to cross-examine the witnesses. The Crawford Court rejected the admission of this *ex parte* inquisitorial examination holding that it exemplifies the type of deplorable state action the Founder's sought to avoid by including the Confrontation Clause. "[A]lthough not spelling out [a] definition of testimonial," the Court held that "'[t]he [Confrontation] Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.'" United States v. Goldstein, 442 F.3d 777, 785 (2d Cir. 2006) (quoting Crawford at 59, n.9).

Assuming *arguendo* that Crawford should be applied retroactively[3], Petitioner's Confrontation Clause argument still fails. Wilson's testimony regarding alleged threats was not admitted to establish whether the threats actually occurred nor to insinuate a link between the threat-makers and Petitioner. Instead, the testimony was permitted at trial for the exclusive purpose of explaining Wilson's state of mind at the time he made the initial recantation in defense counsel's office. The trial court made this clear to the jury prior to Wilson's testimony regarding the threats, and instructed them that "this testimony is coming in solely and exclusively to assist the jury in evaluating the credibility of Mr. Wilson with regard to his testimony on this trial about what happened on November 30 of last year, what happened in terms of signing the statements in [defense counsel's] office, and for your general understanding of how this has evolved." (Tr. at 459.) Therefore, the testimony given by Wilson in regards to threats he alleged

---

[3] Respondent argues that Crawford should not be applied retroactively, but since I find that Petitioner fails on the merits anyway, it is not necessary to reach this issue. (See Respondent's Affidavit and Memorandum of Law in Opposition to Petition for Writ of Habeas Corpus, pp. 23-31.)

was the impetus to signing the recantation is not testimonial hearsay under Crawford and does not violate the Confrontation Clause.

## IV. Conclusion

For the reasons set forth above, the Petitioner's claims do not warrant habeas relief under 28 U.S.C. § 2254. The Petitioner's request for a writ of habeas corpus is therefore DENIED. The Clerk of the Court is directed to close this case.

SO ORDERED.

Date: July 24, 2007
Brooklyn, New York

/signed/
NICHOLAS G. GARAUFIS
United States District Judge